[Cite as *State v. Fritts*, 2020-Ohio-3692.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO/CITY OF HAMILTON, | : | |
| Appellee, | : | CASE NO. CA2019-10-173 |
| | : | O P I N I O N |
| - vs - | | 7/13/2020 |
| | : | |
| RAY FRITTS, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM HAMILTON MUNICIPAL COURT
Case No. 19CRB02845

Neal D. Schuett, City of Hamilton Prosecuting Attorney, 345 High Street, Hamilton, Ohio 45011, for appellee

Christopher P. Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for appellant

**HENDRICKSON, P.J.**

{¶ 1} Appellant, Ray Fritts, appeals from his conviction in the Hamilton Municipal Court for domestic violence. For the reasons set forth below, we affirm his conviction.

{¶ 2} On August 6, 2019, appellant was charged by complaint with domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree. The charge arose out of an incident that occurred between appellant and his wife, Theresa Smith, at

their marital home in Hamilton, Butler County, Ohio on August 5, 2019, wherein appellant choked Smith and pushed her to the ground, causing Smith physical harm.

{¶ 3} Appellant pled not guilty to the charge and a bench trial commenced on September 10, 2019. The state presented testimony from Smith and from Officer Ed Prather. Smith testified that she has been married to appellant since November 19, 2018. Around 7:30 p.m. on August 5, 2019, Smith and appellant were eating dinner in their dining room in the home they shared in Hamilton, Ohio. At this time, Smith informed appellant that she wanted a divorce and the two started arguing. Smith testified appellant got up from the table and briefly left the room. Appellant then came back into the dining room, put his fingers over Smith's nose and stated, "I'm trying to decide on how I'm going to dispose of you." As Smith stood up from the table with her cell phone in hand, appellant pushed her into a doorway and grabbed her throat. Smith testified she started hitting appellant with her cell phone and was able to get free from appellant's grasp. Smith shouted for help and for someone to call the police.

{¶ 4} As Smith attempted to get away from appellant, appellant shoved her and caused her to fall. Appellant sat on top of Smith and began choking her again. Smith testified appellant "was trying to kill me. He was trying to rip my throat up." Smith stated she "continuously hit" appellant with her phone to try to get him off of her. At some point, appellant grabbed the phone from Smith and she was able to get free. Smith crawled underneath a table and was able to get outside, where she told a neighbor to call police. Immediately thereafter, appellant left the marital home in his car.

{¶ 5} Smith estimated that the entire incident with appellant took approximately five minutes and that the police arrived within ten minutes of being called by her neighbor. Smith testified she was harmed during the attack, noting that she had "scrapes all over [her] back" and "marks all over [her] neck" from being choked.

{¶ 6} Officer Prather testified he is employed by the Hamilton Police Department and was dispatched to Smith's and appellant's home on August 5, 2019 on a report of domestic violence. Officer Prather was advised by Smith that Smith's husband had thrown her to the ground and choked her. The officer testified he observed some redness to Smith's neck that was, in his experience, consistent with someone being choked. The officer also observed some marks and fresh scratches to Smith's back.

{¶ 7} Officer Prather testified appellant was not on scene when he arrived. Appellant was stopped in his vehicle by a police officer in New Miami, Ohio and was held until Officer Prather could pick him up. Officer Prather testified that upon encountering appellant, he observed scratches to appellant's arm, chest, and face.

{¶ 8} Following Officer Prather's testimony, the state rested its case-in-chief. Appellant moved for acquittal pursuant to Crim.R. 29, and the court denied the motion. Thereafter, appellant took the stand in his own defense, testifying that on the night in question, he informed Smith he wanted a divorce while the two were eating dinner. In response, Smith briefly left the dining room before coming back a few seconds later and attacking him. Appellant claimed Smith started hitting him in the chest and accused him of cheating on her. According to appellant, Smith repeatedly struck him in the chest before scratching his face. Once Smith scratched him, appellant claimed he pushed Smith away before getting in his car and driving towards a relative's home in Eaton, Ohio. Appellant testified he was stopped by law enforcement in New Miami and held until a Hamilton police officer arrived to arrest him. Appellant's arrest photograph, which showed appellant with scratches to his face, was admitted into evidence.

{¶ 9} Appellant denied that he pushed Smith to the ground or that he punched, choked, or scratched her. He stated the only time he was aggressive towards Smith was when he pushed her away after Smith attacked him. Appellant denied knowledge of how

Smith obtained the marks around her neck and claimed that any injuries Smith had were likely incurred from her work at a warehouse.

{¶ 10} After considering the evidence presented before it, the trial court found appellant guilty of domestic violence. The court noted that "when Ms. Smith testified, the Court believed that she was testifying truthfully and honestly." The court indicated it did not believe that Smith was hiding anything, noting that "[s]he told the parts of the case that weren't helpful to her. She admitted that there * * * might be injury to [appellant] based on what she might have done in reaction to his injuries towards her." Conversely, when appellant testified, "the Court [did] not find [him] to be truthful and honest." The court noted that under appellant's version of events, there would have been "no real reason for a neighbor to call police if what he said happened" actually occurred. The court further noted that appellant's version of events did not explain the marks on Smith's neck, which were observed by Officer Prather – who had no reason to lie about the injuries. The court concluded that the state proved all the elements of the offense beyond a reasonable doubt and disproved self-defense "mainly because the Court did not believe the Defendant's version of him being the person who was the victim here and who was being struck by Ms. Smith, but instead, the Court believed Ms. Smith's version about how this incident started and about how the contact started."

{¶ 11} The trial court sentenced appellant to two years of community control and 180 days in jail, with 120 days suspended. The court ordered appellant to take an anger management class and to pay a $250 fine plus court costs.

{¶ 12} Appellant appealed, raising the following as his only assignment of error:

{¶ 13} [APPELLANT'S] CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 14} In his sole assignment of error, appellant contends his conviction for domestic

violence is against the manifest weight of the evidence. He argues that Smith lacked credibility and that the evidence introduced at trial, including his arrest photograph and Officer Prather's testimony that he observed scratches to appellant's arm, chest and face, established that Smith was the physical aggressor in the altercation.

{¶ 15} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 12th Dist. Brown No. CA2010-06-009, 2011-Ohio-5226, ¶ 81, quoting *State v. Walker*, 12th Dist. Butler No. CA2006-04-085, 2007-Ohio-911, ¶ 26. An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances when the evidence presented at trial weighs heavily in favor of acquittal. *Id.*, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶ 16} Appellant was convicted of domestic violence in violation of R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). A "family or household member"

includes any person who is residing or has resided with the offender as a spouse. R.C. 2919.25(F)(1)(a)(i). Physical harm is "any injury, illness, or other physiological impairment regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 17} Appellant denies that he knowingly caused physical harm to Smith by choking her or shoving her to the ground. He claims he merely pushed Smith away from him after she started hitting him in the chest and scratched his face. Appellant, therefore, contends he acted in self-defense in shoving Smith.

{¶ 18} "Traditionally, self-defense has been an affirmative defense which an accused must prove by a preponderance of the evidence." *State v. Debord*, 12th Dist. Clinton No. CA2019-03-003, 2020-Ohio-57, ¶ 13. However, effective March 28, 2019, the General Assembly modified Ohio's self-defense statute, R.C. 2901.05, in Am.Sub.H.B. 228 to place the burden on the state to prove beyond a reasonable doubt that the accused did not act in self-defense. *State v. Byrd*, 12th Dist. Warren No. CA2019-07-073, 2020-Ohio-3073, ¶ 22. As amended, R.C. 2901.05(B)(1) provides as follows:

> A person is allowed to act in self-defense, defense, of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, *the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence*, as the case may be.

(Emphasis added.)

{¶ 19} An accused is justified in the use of force against another if (1) the accused was not at fault in creating the situation giving rise to the affray; (2) the accused had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the accused did

not violate any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus; *State v. Barnes*, 94 Ohio St.3d 21, 24 (2002). Due to the recent amendment to R.C. 2901.05(B)(1), the state had to disprove one of the aforementioned elements of self-defense beyond a reasonable doubt. *See Byrd* at ¶ 23, citing *State v. Carney*, 10th Dist. Franklin No. 19AP-402, 2020-Ohio-2691, ¶ 31.

{¶ 20} After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's conviction for domestic violence was not against the manifest weight of the evidence. Contrary to appellant's assertions, the greater amount of credible evidence offered at a trial supported Smith's version of events and established beyond a reasonable doubt that appellant was the initial aggressor in the attack. Although appellant denies he initiated the attack on Smith, claiming he only "pushed" Smith away from him after she repeatedly struck him in the chest and scratched his face, the evidence introduced by the state was wholly inconsistent with appellant's version of events. Smith testified appellant attacked her first, causing physical harm to her back and neck when he shoved her to the ground, sat on top of her, and choked her after she asked for a divorce. Officer Prather testified he saw Smith's injuries, noting that there were "fresh" scrapes to Smith's back and redness around her neck that was, in his experience, consistent with someone having been recently choked. The trial court was entitled to rely on Smith's and Officer Prather's testimony in finding the injuries were caused by appellant's attack and were not workplace injuries as appellant claimed.

{¶ 21} The trial court was also entitled to find that the scrapes to appellant's face, arm, and chest were caused by Smith's struggle to free herself from appellant's grasp during his attack, rather than caused by an attack initiated by Smith. The trial court was presented with conflicting versions of events by the witnesses. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply

because the trier of fact believed the prosecution testimony." *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶ 22} Accordingly, as the state proved beyond a reasonable doubt that appellant was the initial aggressor and that he knowingly caused physical harm to his wife by shoving her to the ground and choking her, we conclude that appellant's conviction for domestic violence is not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled.

{¶ 23} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.